[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This case was tried before the court on October 20, 2001. The defendants were ordered to submit briefs by November 15, 2001, which they CT Page 16691 did. The plaintiff is claiming a return of deposit paid for some motorcycles which he ordered from the defendant. The defendant refused to return the deposit or deliver the motorcycles and the plaintiff is suing for the return of the deposit and the damages as alleged.
 FACTS
The plaintiff contends that on or about November 30, 1999, the defendant, Central Sports, Inc., agreed to sell and deliver to the plaintiff one hundred Kawasaki motorcycles at a price of $1,450 each for a total of $145,000. Shortly thereafter, the defendant advised the plaintiff that he could only deliver seventy-three of the motorcycles, which were received and paid for by the plaintiff. The defendant then agreed, in satisfaction of the original agreement and as part of a further agreement, to deliver to Silmarket on or before January, 2000, the following goods: (a) thirty-nine Kawasaki motorcycles at a price of $1,570 each for a total of $68,250; (b) two Yamaha ATVs at a price of $5,500 each for a total of $11,000; (c) four Prairie ATVs at a price of $4,971 each for a total of $19,884; and (d) ten Bayou ATVs at a price of $3,028 each for a total of $30,280. The defendant requested and the plaintiff delivered a $50,000 deposit to secure the remaining undelivered goods. The defendant has not delivered said remaining goods as agreed. The plaintiff has sustained losses for his deposit money in the amount of $50,000 and a loss on the sale transaction of $20,004.
The defendant, Central Sports, Inc., denies that the November 30, 1999 agreement was for one hundred Kawasaki motorcycles. The defendant denies that a subsequent or "further" agreement was made to deliver thirty-nine Kawasaki motorcycles and sixteen ATVs. The defendant denies that the $50,000 delivered by the plaintiff was a deposit to secure the aforementioned motorcycles and ATVs. The defendant claims that the $50,000 was a blanket deposit for all future orders that Silmarket supplied Central Sports which were not in Central Sports' stock. The plaintiff denies this allegation.
The defendant, Central Sports, Inc., has filed a counterclaim against Silmarket Trading, Inc. and Sabastino Martins. In its counterclaim, Central Sports, Inc. alleges that it is entitled to keep the $50,000 as compensation for a prior failed transaction between it and Sabastino Martins, the vice president of Silmarket Trading, Inc. in 1999 and early 2000. Specifically, Central Sports, Inc. alleges that it made an agreement in 1996 with a company called Motor Sports International and with Sabastino Martins to sell to Martins two hundred Kawasaki KE 100s for $1,850 per unit. Sabastino Martins was to purchase the units for the Angolan government and pay all interest, all curtailment charges and all finance charges on the units. Martins purchased one hundred of the units CT Page 16692 in 1998 and never purchased the other one hundred units. Martins never paid the interest, curtailment charges and finance charges on the units. These figures and the lost profits total $345,000. The plaintiff denies these allegations.
 DISCUSSION
The defendant presented no evidence and did not brief its counterclaim. The court accordingly finds that the same was abandoned. Also in its brief, the defendant no longer disputes liability because the court ruled during the trial that the defendant could not present evidence that it was justified in keeping the $50,000 deposit, claiming that it was for all future orders and had to do with a prior failed transaction between the defendant and the former vice president of the plaintiff corporation. The court found that such claims were not relevant to this transaction and sustained objection to such evidence. On the issue of damages, the court finds that the plaintiff is entitled to the return of the $50,000 deposit plus interest for the wrongful withholding thereof pursuant to Connecticut General Statutes § 37-38 in the amount of $7,500. This covers interest from May 1, 2000 through October 31, 2001, 18 months at $416.67 per month plus the same per month thereafter until the debt is paid.
The plaintiff is also entitled to its losses for having to sell items at a reduced price because the items were not obtained in a timely manner in the amount of $16,000. Further, it caused the plaintiff $4,004 more to obtain the vehicles from Nevada than from the defendant in Norwich.
Accordingly, the plaintiff is entitled to judgment in the amount of $70,004 plus interest as stated above in the amount of $7,500.
The plaintiff also claims that the defendant is in violation of the CUTPA statute, Connecticut General Statutes § 42-110g(a), et seq. in that the defendant engaged in an unfair business practice, not only in this case but also in a previous case tried to this court and using the same wrongful practice of retaining of purchases deposit, refusing to return it and claiming the deposit was made to pay for other transactions.
The standard for a CUTPA violation is set forth in the case of HartfordElectric Supply Co. v. Allen-Bradley Corporation, 250 Conn. 334 (1999). In that case, the court stated, "It is well settled that in determining whether a practice violates CUTPA, we have adopted the criteria set out in the `cigarette rule' by the Federal Trade Commission for determining when a practice is unfair: (I) whether the practice, without necessarily having been previously considered unlawful, offends public policy as it CT Page 16693 has been established by statutes, the common law or otherwise — in other words, it is within at least the penumbra of some common law, statutory or other established concept of unfairness; (2) whether it is immoral, unethical, oppressive or unscrupulous; (3) whether it causes substantial injury to consumers [competitors or other business persons]. . . . All three criteria do not need to be satisfied to support a finding of unfairness. A practice may be unfair because of the degree to which it meets one of the criteria or because, to a lesser extent, it meets all three." Willow Springs Condominium Assn., Inc. v. Seventh BRT DevelopmentCorp., 245 Conn. 43. Moreover, this court has set forth a three part test for satisfying the substantial injury criterion: "[1] [the injury] must be substantial; [2] it must not be outweighed by any countervailing benefits for the consumers or competition that it produces; and [3] it must be an injury that consumers themselves could not reasonably have avoided."
Accordingly, the court awards attorney's fees in the amount of $7,732.55 to the plaintiff (Exhibit 39) under Connecticut General Statutes § 42-110g(d) and punitive damages in the amount of $140,008 pursuant to Connecticut General Statutes § 42-110g(a).
Accordingly, the court enters judgment in the total amount of $225,244.55 as against the defendant Central Sports, Inc.
D. Michael Hurley Judge Trial Referee